UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TARAS P. NYKORIAK,

   Plaintiff,         Case No.  1:15-CV-410

v.                 Hon. Gordon J. Quist

LENA WILECZEK,

   Defendant.

_____/

**OPINION**

   Defendant, Lena Wileczek, is a Michigan State Police Trooper who responded to a 911 from Plaintiff, Taras Nykoriak.  After she arrived on the scene, Wileczek detained Nykoriak, confiscated his firearm, and searched his car.  Nykoriak asserts that such actions violated his rights under the Fourth Amendment and that he is entitled to have his firearm returned to him.  For the reasons that follow, the Court concludes that Wileczek did not violate Nykoriak's Fourth Amendment rights and that Nykoriak is not entitled to the return of his firearm.

*Background*[1]

   On March 8, 2015, Nykoriak called 911 to report that his sister had turned white, thrown up, and was losing consciousness.  (ECF No. 23-7.)  Following that call, Wileczek and two other Michigan State Police Troopers, Jesse Binns and Steve Chenet, were dispatched to a gas station in

---

[1] Nykoriak makes a number of allegations in his complaint, including that he was transported and detained at a police station, but has failed to provide any evidence to support such allegations.  Once a defendant has filed a motion for summary judgment, "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Sierra Club v. EPA.*, 793 F.3d 656, 662 (6th Cir. 2015) (internal quotation marks omitted).  Thus, in describing the background of the case, the Court will rely on uncontested allegations and facts supported by evidence.

Paw Paw, Michigan. (ECF No. 23-4 at Page ID.186.) Binns was the first to arrive on the scene, where he found Nykoriak and his sister, Sabina Puchalski, in an SUV. (*Id.*). Binns recognized Nykoriak from a traffic stop several months prior in which heroin was discovered on a passenger of a vehicle in which Nykoriak was riding. (*Id.*)

Chenet arrived on the scene next, following by Wileczek. (ECF No. 23-2 at PageID.120.) Wileczek initially tried to speak to Puchalski, but Puchalski was having difficulty focusing and was nodding in and out of consciousness. (*Id.* at PageID.120-21.) Wileczek believed that Puchalski was under the influence of heroin or other opiates and may have been overdosing. (*Id.* at PageID.121.) After Wileczek finishing speaking with Puchalski, Binns informed Wileczek of his previous encounter with Nykoriak, as well as the fact that there were multiple cell phones in Nykoriak's vehicle. (*Id.*)

After the officers had been on the scene for several minutes, they asked for consent to search Nykoriak's vehicle. (*Id.* at PageID. 122.) Nykoriak refused, and one of the officers called to request a canine officer. (*Id.*) At that point, Nykoriak got inside his vehicle, and Wileczek became concerned about officer safety because it was dark and she could not see what Nykoriak was doing. (*Id.*) Wileczek asked Nykoriak to exit his vehicle and patted him down. (*Id.*) During the pat-down, Nykoriak told Wileczek that he was carrying a concealed pistol. (*Id.*) That was the first time Nykoriak had mentioned the pistol to any of the officers. (*Id.*) Wileczek took the pistol, handcuffed Nykoriak, and put him in her cruiser. (*Id.*)

At that point, the officers began trying to determine whether Nykoriak had a license for a concealed pistol. (*Id.* at PageID. 124.) Wileczek was unable to verify as much through the Law Enforcement Information Network (LEIN), but Chenet verified that Nykoriak had a license through other electronic means. (*Id.*) At some point, the canine arrived and did a free air search around the

2

vehicle. (ECF No. 24-4 at Page ID.171.)  The canine indicated narcotics near the rear of the vehicle and front passenger seat.  (ECF No. 23-2 at PageID.125.)  Officers searched the vehicle but did not find narcotics.  (*Id.*)  After the officers concluded the search and the inquiry into whether Nykoriak had a concealed weapon license, Nykoriak was released.  (*Id.*)

### *Legal Standard*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*  The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).  **"To defeat a motion for summary judgment a plaintiff can no longer rely on the conclusory allegations of its complaint."** ***Wharf v. United States Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (internal quotation marks omitted).  Rather, the non-moving party must present affidavits or other evidence demonstrating a genuine issue for trial.  *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002); Fed. R. Civ. P. 56(c).**

### *Discussion*

Nykoriak asserts that his detention and the search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Nykoriak also argues that his pistol was illegally confiscated and should be returned to him.

1. <u>Nykoriak's Detention</u>

Police officers may "briefly stop an individual for investigation if they have reasonable suspicion that the person has committed a crime." *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003). "Since an investigatory stop is less intrusive to one's personal security than an arrest, the level of suspicion necessary for such a stop is thus considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (internal quotation marks omitted). "Courts determine whether a reasonable suspicion exists by looking at the totality of the circumstances and considering all of the information available to law enforcement officials at the time." *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008) (internal quotation marks omitted). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750-51 (2002) (internal quotation marks omitted).

A lawful investigative stop "must be limited in both scope and duration." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010) (internal quotation marks and alterations omitted). "The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). The Supreme Court has made clear, however, that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and that "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* at 500, 103 S. Ct. at 1325-26. An investigative detention that "occurs over an unreasonable period of time or under unreasonable circumstances" may mature into an arrest. *Hoover v. Walsh*, 682 F.3d 481, 498 (6th Cir. 2012) (internal quotation marks and ellipses omitted). To determine reasonableness, courts consider such factors as "the transportation

4

of the detainee to another location, significant restraints on the detainee's freedom of movement involving physical confinement or other coercion preventing the detainee from leaving police custody, and the use of weapons or bodily force." *Id.* (internal quotation marks omitted).

Nykoriak appears to acknowledge that the initial encounter—which was based on the 911 call Nykoriak placed regarding his sister—did not violate the Fourth Amendment. *See Stricker v. Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013) (holding that a 911 call about a drug overdose justified a warrantless search). Nykoriak argues, however, that the encounter matured into an arrest when Wileczek handcuffed him and put him in her vehicle,[2] and that the arrest was illegal because it was not supported by probable cause.

Officers may use handcuffs during an investigative stop if they have "some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose." *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005). Thus, the Sixth Circuit has upheld the use of handcuffs during investigative stops under various circumstances. *See id.* at 836-37 (discussing cases). Moreover, "[d]etention in a police car does not automatically constitute an arrest." *United States v. Bradshaw*, 102 F.3d 204, 211 (6th Cir. 1996). Rather, courts examine the circumstances to determine whether such detention is reasonable. *Jacob*, 377 F.3d at 579.

In this case, Wileczek responded to a call that Puchalski was in medical distress. Shortly after arriving on the scene, Wileczek determined that Puchalski appeared to be under the influence of heroin. She also learned that Nykoriak had previously been stopped in a car containing heroin, and that he had several cell phones in his vehicle. Wileczek also knew that the interstate route upon which Nykoriak was traveling was part of a drug trafficking corridor. Based on that information,

---

[2] Nykoriak asserts in his brief that he complained that the handcuffs were too tight and that he was taken to a police station and held there for over an hour. Wileczek has provided an affidavit stating that Nykoriak was released following the search of his vehicle, and that no one informed Wileczek that the handcuffs were too tight. Nykoriak has failed to provide any evidence to refute Wileczek's statements or support the assertions in his brief.

5

Wileczek became suspicious that Nykoriak may have been engaged in illegal drug activity, and became concerned about officer safety. Wileczek thus ordered Nykoriak out of the car and learned, for the first time, that he had a weapon on his person. Wileczek then handcuffed Nykoriak and placed him in her car while she examined Puchalski, determined whether Nykoriak had a concealed weapons license, and waited for a canine to arrive.

"[O]fficers who stop a person who is reasonably suspected of carrying drugs are entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions, and to take reasonable measures to protect themselves." *Jacob*, 377 F.3d at 579. Wileczek reasonably believed that Nykoriak had been caught in a vehicle with someone who was using or carrying heroin on two separate occasions, and she knew that he was traveling along a drug corridor. Wileczek also knew that Nykoriak was carrying multiple phones, a practice employed by drug traffickers. That Nykoriak was also carrying a concealed firearm—and did not tell anyone of that fact until just before it would have been discovered—further heightened her suspicion that Nykoriak was involved in illegal drug activity, and that he could pose a threat to officers. At that point, it was reasonable for Wileczek to handcuff and detain Nykoriak in her vehicle to protect herself and the other officers while they checked whether Nykoriak had a concealed weapons license and waited for the canine to arrive. Those measures did not transform the investigatory stop into an arrest, and thus probable cause was not required.

Wileczek had reasonable suspicion that Nykoriak was engaged in criminal drug activity, and thus acted lawfully in detaining him until a canine could arrive and do a free air search. There is no evidence that such detention lasted any longer than was necessary, or that the means used were more intrusive than necessary. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (noting that an officer may not conduct a dog sniff during a traffic stop unless there exist "the reasonable

6

suspicion ordinarily demanded to justify detaining an individual"). Accordingly, the Court concludes that Wileczek's detention of Nykoriak did not violate the Fourth Amendment.

2. <u>Search of Nykoriak's Vehicle</u>

The Fourth Amendment generally requires police officers to obtain a warrant prior to conducting a search. *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007). Under the automobile exception, however, "police officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime." *Id.* (internal quotation marks omitted). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion, and is said to exist when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (citation and internal quotation marks omitted). The Sixth Circuit has held that "the alert of a properly trained and reliable drug dog 'is sufficient to establish probable cause for the presence of a controlled substance.'" *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010) (quoting *United States v. Diaz*, 25 F.3d 392, 393–94 (6th Cir.1994)).

As discussed previously, Wileczek had reasonable suspicion that Nykoriak was engaged in illegal drug activity prior to the arrival of the canine. When the canine arrived, he positively indicated narcotics in the vehicle.[3] That fact was enough for reasonable suspicion to develop into probable cause. Accordingly, the search of the vehicle did not violate the Fourth Amendment.

3. <u>Possession of the Firearm</u>

Nykoriak asserts a state law claim for replevin, arguing that Wileczek unlawfully confiscated his firearm and must return it. An action for replevin is governed by M.C.L. § 600.2920, which

---

[3] Nykoriak has not argued that dog was not properly trained or was unreliable.

7

provides that an "action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained." M.C.L. § 600.2920(a).

Michigan's concealed carry statute requires an individual to carry his concealed carry license any time he is carrying a concealed pistol. M.C.L. § 28.425f(1). If an individual does not do so, a law enforcement officer may seize the pistol. M.C.L. § 28.425f(7). An individual whose pistol is seized under such circumstances is entitled to its return if he provides his license to the relevant law enforcement agency within 45 days of the seizure, unless the individual is prohibited by law from possessing a firearm. *Id.*

In this case, the seizure and detention of the pistol was lawful. Nykoriak did not present Wileczek with a concealed carry license before she seized his firearm, and she was not able to verify that Nykoriak had a license through the LEIN. Moreover, Nykoriak did not present his license to the Michigan State Police after the seizure. Finally, shortly after the March 8, 2015 incident, a court in Oakland County entered a personal protection order against Nykoriak that prohibited him from possessing firearms. (ECF No. 23-11.) Shortly after that, Nykoriak was charged with theft of government property, 18 U.S.C. § 641, and was prohibited from possessing a firearm by the terms of his pretrial release in the federal case. (*Id.*) Since this action was first filed, Nykoriak has been sentenced to 16 months imprisonment in that case. (*Id.*) In short, Nykoriak has failed to demonstrate that his pistol was unlawfully taken or detained, and may not maintain an action for replevin under M.C.L. § 600.2920.

*Conclusion*

Wileczek had reasonable suspicion that Nykoriak was involved in illegal drug activity, and thus was entitled to detain him for a limited period of time while waiting for a canine to arrive and to determine whether his possession of a concealed firearm was lawful. Moreover, the manner in

8

which she detained him was reasonable under the circumstances.  Following the canine sniff of the vehicle, Wileczek's reasonable suspicion developed into the probable cause necessary to search Nykoriak's vehicle.  Thus, neither the detention nor the search violated the Fourth Amendment.  Moreover, because Nykoriak cannot demonstrate that his firearm was taken or detained in an unlawful manner, he cannot maintain an action for replevin under Michigan law.  Accordingly, the Court will grant Wileczek's motion for summary judgment.

      An order consistent with this Opinion shall issue.


Dated:  April 14, 2016                                                 /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE